The defendant Chamblis, in his answer, admitted the sale of the horse, through the agency, of Loyd, as charged in the bill; that the bond was made payable on 25 December, 1820, and was by Loyd left with the defendant Hylton for collection; that in May following the sale to the plaintiff, he, the defendant, went from his residence in Virginia to the house of the defendant Hylton, in Stokes County, when both of them went to the house of the plaintiff; that he, Chamblis, being then in want of money, on the way offered to sell the plaintiff's bond to Hylton, but that no bargain was then made; that after their arrival at the house of the plaintiff, he, Chamblis, and the plaintiff had some private *Page 251 
conversation, in which the plaintiff complained that the horse was more than eight years old; that he, the defendant, stated the age of the horse to be twelve years, and that Loyd was not authorized to represent the horse to be only eight; that the plaintiff insisted upon having some deduction from the bond on account of the misrepresentation of Loyd, which was refused by him, but that he then informed the plaintiff, as (431) the bond had a considerable time to run, and he, the defendant, was much in want of money, he would take for the bond $300, provided it was promptly paid; that the plaintiff then agreed, if he could borrow the money, he would, either that evening or the next morning, pay $300 and take up his bond; that he believed the defendant Hylton had the money, and he would endeavor to borrow it of him; that the plaintiff applied to Hylton to lend him the money, but the defendant did not know what passed between them, further than that it was then agreed that the parties should all meet the next day at Hylton's house, when he, Hylton, refused to lend the plaintiff any money, but bought his, the plaintiff's, bond of him, Chamblis, for $300, promising that if the plaintiff would repay him on the 20th of June following, he, Hylton, would deliver up the bond, and that Hylton gave the plaintiff an instrument in writing to that effect, stating at the same time that if the plaintiff did not thus repay him, he should exact the amount of the bond, to which the plaintiff assented, and promised either to pay the $300 by the time limited or to pay the amount of the bond at its maturity.
The defendant denied all knowledge of the certificate given by Loyd to the plaintiff respecting the age and pedigree of the horse, and denied that Loyd was authorized to represent the horse as of the age of eight years.
The defendant Hylton, in his answer, admitted the sale of the horse to the plaintiff by Loyd, and that the bond was left with him for collection. He stated that up to the month of May after the sale, he never had seen the plaintiff; that in that month Chamblis came to his house, endeavoring to raise money, saying that an execution was then out against his property, which would be sold unless he could raise $300, and proposed that he, Hylton, should lend him that amount; that he, Hylton, proposed going to the house of the plaintiff, from whom the money might probably be obtained; that while they were at the (432) plaintiff's house, Chamblis and the plaintiff had much conversation, which he did not overhear; that after it was over, the plaintiff informed him, Hylton, that if the had $300 he could take in his bond of $400, and requested him, Hylton, to lend him that sum, which was refused, the defendant stating that if he loaned money to either of them, it must be to Chamblis, with whom he was acquainted; that upon the repeated importunity of the plaintiff, he agreed to meet at his *Page 252 
(Hylton's) house the next day; that upon their meeting, he still refused to lend the plaintiff any money, as he was utterly ignorant of his circumstances. The plaintiff then insisted upon his purchasing the bond of Chamblis, stating most positively that he would repay him in ten days; upon which the defendant did advance the money to Chamblis, took an assignment of the bond, and executed to the plaintiff the instrument already set forth. He denied positively that any deduction from the bond on account of a fraud in the sale of the horse by Loyd was mentioned to him, or that he knew of any complaint on that account before his purchase, and averred that in several conversations between him and the plaintiff, before and after the expiration of the twenty days limited for the repayment of the money lent, the plaintiff never, in any form, objected to the bond on account of any fraud in obtaining it, but constantly stated his willingness to pay the $400, unless he made the payment of $300 by the time limited in the instrument given him by the defendant.
Upon these answers, the injunction was retained until the hearing, and replications were filed. No testimony was, however, taken; and after the cause had stood in the court below on this order for several terms, it was set for hearing, upon the bill and answers, and removed to this Court.
The point upon which the plaintiff's counsel has put this case does not arise. There is no usury, even if it be taken for granted that the advance of the $300 was by way of loan from Hylton to Moore; for wherever the debtor, by the terms of the contract, can avoid the payment of a larger by the payment of a smaller sum at an earlier day, the contract is not usurious, but conditional; and the larger sum becomes a mere penalty. To constitute usury, the obligation to pay more than the legal rate of interest must be absolute upon the face of the transaction. Now, regarding the assignment of the bond, and the instrument in the nature of a defeasance, given by Hylton to Moore, all as one transaction, as we must do, when we treat the advance of the money as a loan, and these papers as securities, they show the true debt to be $300, to be paid on 20 June under penalty of $400. If this were usury, every penal bond would be void. Nor is there usury as between Moore and Hylton, upon the score of the discount allowed by Chamblis; that is, taking the transaction to be a sale of the bond by Chamblis; for a contract good in its creation is not avoided by a *Page 253 
subsequent usurious agreement. The receipt of the unlawful interest subjects the receiver to the penalty; but the validity of the security is not impaired thereby.
But the plaintiff is as clearly entitled to be relieved from the $100, regarding it as a penalty, as he would be on the score of usury, did that exist. If there was a loan by Hylton to Moore, only the money advanced and interest can be now exacted, whatever the form of the securities may be. The excess beyond that would be either usurious interest or a penalty; in either case the Court would relieve.
It does not appear distinctly from the framing of the bill whether the relief is put upon that ground or upon that of the fraud in the sale of the horse, and the subsequent compromise between Moore and Chamblis. It is manifest that those two cases can have no connection with each other so as to create an equity for the plaintiff; for it (434) is immaterial what was the character of the dealings between Moore and Chamblis, if in fact the money was lent by Hylton to Moore; for that is a new and independent contract. It is to be regretted that pleaders do not place the equity of their clients upon distinct statements, calculated of themselves to support it, so that the ground of the relief might stand out visibly to the Court. Looseness and confusion in stating the plaintiff's case often embarrass the Court and defeat the relief by not drawing from the defendant distinct and proper answers. But it is unnecessary to pursue these considerations further, since the cause must be decided against the plaintiff upon other points.
For allowing the bill to be duly framed, and to stand in the alternative, that there was a loan to Moore directly, and that the assignment of the bond was merely a mode of securing the repayment; or that Loyd was guilty of a deceit in the sale of the horse, and that Chamblis agreed to deduct $100 as the valued damages on that account, and that Hylton purchased the bond afterwards, with notice thereof: in either aspect, the bill must be dismissed, not for want of equity, but for want of evidence. The plaintiff's equity upon the first point has already been considered. That on the second head is equally clear, taking the facts for granted. That they are true is most probable; for it is almost impossible to suppose that Loyd should be sent off by Chamblis to make sale of a covering horse without any instructions to the material fact of his age; that Chamblis should have felt it necessary to hold his conversation with Moore, upon the simple matter of a speedier payment of the bond, in private; that Moore's complaint of the fraud should not have entered at all into the agreement for the deduction; that Chamblis should have entirely concealed from his particular friend, Hylton, then his companion at Moore's and his host that night, those parts of the conversation, which concerned Moore's grievance; and that the (435) *Page 254 
agreement given in writing by Hylton to receive $300, had no reference to the defect in the horse, and Chamblis's stipulation to abate for it. Yet such is the tale in the answers; which deny altogether and directly the fact of the loan; deny the fraud by Loyd; do not admit his certificate; admit Chamblis agreement to deduct $100, but attribute it altogether to his pressure for money, which induced him to allow that heavy discount for prompt payment; admit the written instrument, charged to have been given by Hylton, but say that it was a mere bounty, for that he refused to lend the money to Moore, but bought the bond from Chamblis. It would be hard to believe witnesses who deposed to such a case, much more the answers of defendants. The court did, therefore, very right to refuse to dissolve the injunction upon the coming in of the answers. Upon that occasion the answers could be scanned; and although their contents are generally to be deemed true, yet any evasion in not responding to the material charges of the bill, or an extreme improbability in the accounts given by the defendants of the transaction, might well prevent the court acting on them. Upon a motion to dissolve, the defendant is the actor. His statement must not, therefore, shock credulity itself. In such a case the court will keep up the injunction, to allow the plaintiff an opportunity to except to the answer, or let the case stand for proofs; for upon a replication to the answer, the defendant must prove the whole of his case, and his answer is only evidence of it so far as it is responsive to the plaintiff's charges.
Here no proofs have been taken on either side; and the plaintiff has overruled his own replication by setting the cause down for hearing upon bill and answers. What before we could not listen to, now becomes quite credible, because the plaintiff expressly admits the truth of it (436) upon the record. The answers deny positively the loan; do not admit the fraud, and deny any agreement to abate therefor, and assert a sale of the bond by Chamblis to Hylton. Upon the answers, which the plaintiff compels us to receive as true in all their parts, the case is this: A creditor agrees, without any consideration, and purely as a bounty, to remit to his debtor a portion of his debt. Such a promise is obligatory neither at law nor in equity.
HENDERSON, C. J., concurred.